129  541
f130  793

### SASSER *v.* THE STATE.

1. A visit of the widow of the deceased to the office of the defendant's counsel, after the homicide, without the knowledge, consent, or acquiescence of defendant on trial for assassinating her husband, is not admissible against the defendant in support of a contention of the State that she was then in sympathy with him, or that she had with him, prior to the homicide, illicit relations.

2. The second assignment of error in the amendment to the motion for new trial does not set forth sufficient facts to enable this court to determine whether or not the court below committed error.

3. Where the court, over objection, admits evidence, with the statement that he will rule it out unless connected in point of time, and it is not thus connected, although such evidence may be inadmissible, it is not incumbent upon the court, of its own motion, to exclude it.

4. Where a person is on trial for assassinating another, evidence of bad feeling on the part of the deceased toward the defendant, unknown to the defendant prior to the killing, is inadmissible against him.

5. Under the evidence in this case, it was error to admit testimony against the defendant, as to differences and quarrels between deceased and his wife about the defendant, unknown to the defendant prior to the homicide.

6. The refusal of the court to permit counsel for defendant to ask a witness for the State about a difficulty between him and defendant, to show his ill feeling toward defendant, is not error, unless the witness denies such ill feeling.

7. In view of a witness for the State declining to tell others prior to the trial what she testified to on the trial against defendant, brought out on cross-examination, and evidence of her other conduct offered by defendant, it was not error to allow her to testify, as an explanation

of her previous conduct, that she was told by another that if she told what she testified to, defendant would kill her.

8. Where testimony is offered for the purpose of impeaching a witness, it is not error for the court to fail to charge the jury that the evidence offered for the purpose of impeachment should be considered by them solely for that purpose, in the absence of a written request, made at the proper time, for this charge to be given.

9. The defendant, who claimed an alibi, on trial for murder of another at night, could not, in support of such defense, prove that about six hours before the killing occurred, he invited another to spend the night with him at his home, about three miles from the scene of the homicide. Such a statement to another was a declaration in his own favor and was inadmissible.

10. Under the facts of this case, evidence that the son of the deceased had spent the night with the defendant, several months before the homicide, was properly excluded.

11. Under the evidence, it was not error to exclude testimony that the defendant's brother offered his own horse for comparison of tracks with those found near the residence of the deceased after the homicide, which tracks the State claimed were made by the defendant's horse.

12. "Affidavits relating to a ground of a motion for a new trial, which are referred to therein as being attached to the motion as exhibits, and which are actually so attached, and which were filed with the motion as a part thereof, are a part of the record in the case."

13. "Affidavits relating to a ground of a motion for a new trial which are not referred to therein, nor attached to the motion as exhibits, nor filed with the motion as a part thereof, but each separately filed, can not be considered by this court when transmitted as a part of the record, even though it appear, from a statement of the judge on each affidavit, that the same was used on the hearing of the motion for a new trial, and each affidavit was actually filed in office."

14. "When affidavits used on the hearing of a motion for a new trial are not made a part of the record in the case, either by being embodied in an approved brief of the evidence or otherwise before the bill of exceptions is certified, the judge has no authority, by an order passed after the bill of exceptions is certified, to declare such affidavits to be a part of the record. Even if a simple order of the judge would make such affidavits a part of the record, the order must be passed before the bill of exceptions is certified."

15. When it appears that one juror sworn and empaneled in the trial of a murder case had stated that defendant had killed deceased and ought to be hung; that another juror had made the same statement, and, in addition thereto, that if he "got on the jury" he would hang him or, stay there till he perished;" and that another juror had stated that he believed defendant was guilty and if he was on the jury he would hang him, and there is nothing before this court to rebut the charges so made, a new trial must be granted

Argued October 25,—Decided November 14, 1907.

Indictment for murder. Before Judge Rawlings. Screven superior court. July 15, 1907.

*E. K. Overstreet* and *P. W. Meldrim,* for plaintiff in error.

*John C. Hart, attorney-general, Alfred Herrington, solicitor-general, Hines & Jordan, Twiggs & Oliver,* and *H. A. Boykin,* contra.

HOLDEN, J. Sylvester Sasser was indicted for murder, and was tried, convicted, and sentenced to life imprisonment, at the November term, 1906, of Screven superior court. Motion for new trial was duly made during the term, and at the hearing of the motion the judge passed an order overruling the same, to which the defendant excepted.

M. L. Parker, while standing in a bedroom of his residence in Screven county, about midnight the 8th day of April, 1905, was killed by some one on the ground, who fired upon him through a window, with a gun loaded with buckshot. On the next day, near the premises, there were found horse tracks, which the State claimed were made by the horse of the defendant. A negro woman, who was a servant in the home of the deceased at the time of the homicide, testified that she saw the defendant under a tree in the yard of the deceased at about 8 o'clock on the night of the homicide. The State contended that the defendant was criminally intimate with the wife of the deceased. Much evidence was introduced on both sides of the case in support of their respective contentions.

In addition to allegations of error in the rulings and charge of the court, several of the grounds of the amendment to the motion for new trial attack the competency of the jurors who tried the case, on the grounds, that they were not impartial between the State and the accused; that prejudice and bias rested on their minds against him; that after hearing evidence delivered on the first trial, opinions had been formed and expressed in regard to the guilt of the accused. These grounds of the amended motion complain that one of the jurors, before the trial of the case, stated that "Sasser had killed Parker and ought to be hung," that another juror, prior to the trial, had said "Sylvester Sasser and Mrs. M. L. Parker ought to be stobbed to a stump and burnt, and if I was on the jury I would hang him," and that "Sylvester Sasser ought to be hung and she ought to be burnt;" and that another

juror had said, prior to the trial, "I believe Sylvester Sasser is guilty. If he is not guilty, who in the hell is guilty? I believe he is guilty, and if I was on the jury I would hang him." Affidavits of the defendant and his counsel that they did not know of these facts before the trial was ended, and affidavits as to the credibility, character, etc., of the witnesses by whom defendant undertook to prove the truth of the grounds, were all attached to the amendment and filed with it as a part of the amendment. Counsel for defendant in error contends that the State made a counter-showing, and, on the hearing of the motion for new trial, furnished the court affidavits denying the truth of these grounds of the amendment, but these affidavits were not attached to the motion, nor were they embodied in the bill of exceptions or attached thereto as exhibits, and no brief of evidence introduced upon the hearing of the motion was approved by the court and filed as a part of the record. After the bill of exceptions was signed, the solicitor-general made an application to the judge, under the Civil Code, §5536, asking that these affidavits be sent up as a part of the record, which application was granted and an order duly passed thereon. Under this order the clerk sent up copies of said affidavits, on which appear entries of filing in the clerk's office. Upon the call of the case in this court, counsel for the State suggested a diminution of the record, and averred that the clerk had failed to enter upon said affidavits copies of the entries of the judge, identifying each of said affidavits, and asked that copies of these entries of the judge on said affidavits be ordered by this court to be sent up by the clerk. Counsel for defendant in error admitted, during the argument of the case in this court, that these entries by the trial judge on the affidavits identifying each were made some time after the bill of exceptions was certified.

1. Plaintiff in error contends that the court erred in permitting, over his objections, Mrs. M. L. Parker, the widow of the deceased and a witness for the State, to testify that on Saturday after the homicide she came into town and called at the office of counsel for the defendant. It does not appear that this visit was made at the instance or with the knowledge or acquiescence of the defendant. It is claimed by counsel for the State that this testimony was admissible for the purpose of showing the sympathy of the widow of the deceased for the defendant,

who was charged with his assassination, and that it was further a circumstance to show illicit relations between them prior to the homicide, which is one of the contentions of the State in the case. We do not see how the conduct of the widow of the deceased, after the homicide, in the interest of the defendant and indicating sympathy for him, could be admissible against him, nor do we see how her conduct evincing sympathy for the defendant could be admissible for the purpose of showing illicit relations between them prior to the homicide, when her conduct and acts were not at the instance of defendant, nor with his knowledge or acquiescence. We think the admission of this testimony over the objection of defendant's counsel was error. ' Under the evidence in this case, the only purpose this testimony could serve was to show sympathy for the defendant on her part, or as a circumstance indicating illicit intercourse between them prior to the homicide. 6 Enc. of Ev. 666.

2. The State contended that the deceased, while standing in a room of his residence, was shot through a window by the defendant while standing on the ground. Upon the trial the court permitted Twitty, a witness for the State, to testify to his opinion as to the height of the man who did the shooting. This assignment of error can not be considered, because it does not appear what was the testimony of the witness upon which he based the opinion sought in the question asked him. The question propounded to the witness was, "Having stated these facts and measurements, . . what do you say as to the height of the man who did the shooting?" It does not appear from the assignment of error what were the facts referred to in this question as "these facts." *Johnson* v. *Perry,* 121 *Ga.* 68.

3. Defendant complains in the 3rd ground of his amended motion for new trial that the court erred in overruling his objection to the testimony of Leonard Parker, a witness for the State. The only complaint in this assignment of error which the defendant appears to have made is that the court should not have permitted testimony of Leonard Parker as to any disagreements between his father, the deceased, and his mother. It does not appear what this testimony was. The question propounded by the State for the purpose of eliciting testimony in regard to disagreements between his father and mother is stated, but it does not

appear what was the answer of the witness to this question. Hence the court can not rule upon this objection to the testimony, it not appearing in the amendment to the motion what the testimony was. It does not appear, in the assignment of error, that the witness answered the question, or, if he did answer it, what reply he gave. In this assignment of error it appears that in answer to another question stated, the witness said that his father, the deceased, wanted the defendant away from his house, but it does not appear that any objection was made to this answer. The ruling upon the objections offered was as follows: "According to my view, I will admit it, but I will rule it out unless you will connect it in point of time." Under this ruling of the court the testimony went in, but it does not appear that any motion was subsequently made to rule it out. The court having admitted the testimony, stating at the time that he would rule it out unless the State's counsel connected it in point of time, it was the duty of defendant's counsel to call the attention of the court later on in the progress of the trial to the fact that it was not connected in point of time, and to ask that it be ruled out. In view of the failure of defendant's counsel to do this, according to the repeated rulings of this court, the admission of the testimony, and the failure of the court of his own motion to rule it out subsequently to its admission, was not error of which the defendant's counsel can complain. *Stone* v. *State,* 118 *Ga.* 705; *Cawthon* v. *State,* 119 *Ga.* 395; *Williams* v. *State,* 123 *Ga.* 138; *Hix* v. *Gulley,* 124 *Ga.* 547.

4. The 4th ground of the amendment to the motion for new trial complains that the court erred in permitting a witness for the State, over objections of defendant's counsel, to testify that there was bad feeling on the part of the deceased toward the defendant. The record of the evidence of this witness shows that in addition to testifying that the deceased had bad feelings toward defendant, he also testified that the state of feeling between the deceased and the defendant "was not good, and that it was bad, and that bad state of feelings between them had existed for a good while." If the witness's testimony was simply that there was bad feeling on the part of the deceased toward the defendant, uncommunicated to the defendant, such testimony would be inadmissible for two reasons. First, simply proving a bad state of

feeling on the part of the deceased toward the defendant, unknown to him, could illustrate no issue in this case, where the defendant is charged with killing the deceased without any provocation on the part of the deceased. The bare fact that the deceased entertained bad feelings toward the defendant, when it did not appear that the defendant knew of their existence, could not in any way illustrate the conduct of the defendant under the facts of this case. Second, it would be error because it is the statement of a conclusion and not a fact. A witness can state what his own feelings toward another are, but if an effort is made to get from him what state of feelings another entertains, facts should be stated from which the jury can draw their own conclusion as to the existence of such state of feeling, and the nature and extent of it. The court committed error in permitting the witness to testify as to the state of feeling of the deceased toward the defendant, as it was a conclusion of the witness which must have been drawn from facts within his knowledge, and those facts should have been stated, instead of stating his conclusion as to what the state of feeling was by reason of such facts. In undertaking to prove bad feeling on the part of the deceased toward the defendant, the facts indicating its existence should be shown, instead of showing the opinion of a third person. But under the facts of this case, proof of bad feeling of the deceased toward the defendant alone would not be admissible. In order to make it admissible, it would have to be shown that the defendant knew of it. In Wharton on Homicide (3d ed.), §596, the rule is stated as follows: "In order to establish a motive for the commission of a crime, however, it is essential that the facts upon which the alleged motive is based shall be within the knowledge of the accused, and evidence as to conduct and acts tending to show motive for a killing is not admissible, where it does not appear that such acts and conduct were brought to the knowledge of the accused." See also 6 Enc. Ev. 720, par. (F), and authorities there cited.

5. Counsel for plaintiff in error contends that the court erred in overruling objections to the testimony of a witness for the State to the effect that there had been differences between the deceased and his wife about the defendant. It does not appear from this assignment of error whether or not the defendant knew of these differences and quarrels between the deceased and his

wife about him. These differences between the deceased and his wife about the defendant would tend to illustrate the state of mind on the part of the deceased toward the defendant, but testimony in reference to these differences, under the facts of this case, would not be admissible unless the defendant knew of them before the killing. It not appearing, from the evidence, that he did have such knowledge, it was error to admit evidence against him in regard to them, under the facts in this case. See authorities cited in the preceding paragraph of this opinion.

6. It is complained that the court erred in refusing to admit the testimony of a witness for the State, on cross-examination, that the defendant " hit at him " in a difficulty which had occurred between them. The purpose of this testimony was to show the state of· feeling on the part of the witness toward the defendant. The Penal Code, §1023, provides: "The state of the witness's feelings to the parties, ·and his relationship, may always be proved for the consideration of the jury." A party can not prove a difficulty between a witness and a party to the case on trial, to show bad feeling on the part of the witness toward him, unless the witness denies that such feeling exists. Whenever the witness denies that such feeling exists, it is proper °to permit the witness to be interrogated as to any difficulty or trouble between them, for the purpose of rebutting this denial and showing that such feeling does exist. It does not appear from this assignment of error that the witness had denied having bad feeling toward the defendant. It is true that this language appears in the assignment of error: "the witness having been asked as to the state of his feelings toward the defendant;" but it nowhere appears from the assignment of error what his answer was to this question, and the court can not consider this assignment of error complaining that the court refused to permit counsel for defendant to ask the State's witness as to a previous difficulty between him and the defendant, in order to show the witness's state of feelings toward the defendant, because it does not appear that the witness had denied having ill feeling toward the defendant. *Palman* v. *State,* 61 *Ga.* 379; *Conyers* v. *Field,* 61 *Ga.* 258; *Bishop* v. *State,* 9 *Ga.* 121. If a witness admits ill feeling toward a party to a case, he can not be interrogated as to difficulties between them in order to show bad feeling; but if a witness denies having ill feeling toward

a party to a case, he can be interrogated as to difficulties between him and said party, in order to show his ill feeling toward such party. A witness can be shown to be friendly with and entertain good feeling toward a party to a case; and should he deny that this is true, evidence is admissible to rebut such denial and show that such state of friendly feeling and intimacy exists. *Daniel* v. *State*, 103 *Ga.* 202; *Purdee* v. *State*, 118 *Ga.* 798.

7. Marcella Moore, a witness for the State, testified that she saw the defendant standing under a chinaberry tree in the yard, near the dwelling of the deceased, about 8 o'clock on the night of the killing, and that when he saw her he stepped back. The State proved by this witness that the reason she did not tell this before was that the wife of the deceased told her if she told it the Sassers would kill her. Counsel for plaintiff in error contends that the court erred in permitting this testimony over his objection. The witness testified that she told Mr. Ennis that "whatever I knew I was going to tell, and no more than that," and further testified, "but I didn't tell him what I knowed." She also testified that she told Mr. Ennis, "I didn't want to know nothing until I got down here to tell it." In view of this testimony of the witness, as to what she told Mr. Ennis, and in view of the testimony of other witnesses, as to what she told them, and of her other conduct as shown by the evidence, it was not error to permit her to testify that the reason she did not tell it before was that Mrs. Parker said that if she told it the Sassers would kill her; in order to explain her previous conduct and what she said in conversations with others. *Hunter* v. *State*, 43 *Ga.* 483 (2).

8. Where testimony is offered for the purpose of impeaching a witness, it is not error for the court to fail to charge the jury that the evidence offered for the purpose of impeachment should be considered by them solely for that purpose, in the absence of a written request made at the proper time for this charge to be given. It is proper for the trial court to give such charge and inform the jury, either in his general charge, or at the time the testimony is admitted, that the impeaching evidence can be considered by them only for the purpose of impeachment; yet it is not error requiring the grant of a new trial if the court fail to do this in the absence of a timely written request. This is true when the court fails to charge the law in regard to the impeach-

ment of witnesses, and it is likewise true when he fails to charge the jury as to the purpose of impeaching testimony. *Steed* v. *State,* 123 *Ga.* 569; *Campbell* v. *State,* 124 *Ga.* 432; *Cress* v. *State,* 126 *Ga.* 564.

9. It was shown, from the evidence, that the deceased was killed about half-past 12 o'clock on Saturday night, and the defendant sought to prove by Allen Sasser that about sundown on Saturday evening, before the killing that night, the defendant asked him to stay all night with him. The court sustained the objection to this testimony and ruled it out. This was a declaration of the defendant in his own favor, and the court did right in excluding it.

10. The defendant offered to prove, by a witness for the State, that Hollis Parker, the son of the deceased, who was a witness for the State, spent the night with the defendant, during Christmas, several months before the homicide, and went to a Christmas tree with the defendant during that night. The purpose of this testimony was to show the state of feeling between the son of deceased and the defendant. The fact that the son of the deceased, a witness for the State upon the trial, was with the defendant several months before the homicide could not illustrate any issue in the case, and the court did right in excluding the testimony offered.

11. There was no error in excluding the testimony of a witness for the defendant, that Willie Sasser offered to allow the witness to examine his horse and make a comparison with the horse tracks found around the premises of the deceased on the day after the killing. This assignment of error simply and only shows that this offer of Willie Sasser was rejected as evidence. It does not appear when or where the offer was made, or that the offer was refused, or that the witness to whom the offer was made had testified in regard to the tracks of the horse claimed to belong to defendant. .

12-15. Counsel for plaintiff in error contends that the affidavits furnished by the State in rebuttal of the testimony offered by the defendant in support of the grounds of the motion for new trial, attacking the competency of the jurors, should not be considered by this court, under the statement of facts in this case. Similar contentions, under almost identically the same

state of facts, were passed upon by this court in the case of *Glover* v. *State*, 128 *Ga.* 1, and it was ruled in that case that such affidavits could not be considered by this court in passing upon the question as to whether or not the trial judge committed error in overruling the grounds of the motion attacking the competency of the jurors who tried that case. In the *Glover* case, supra, the questions made in this case were elaborately discussed, and it is useless to go into any extended discussion of them here. The affidavits offered by the State upon the hearing of the motion for new trial in the present case, and which this court is now asked to consider, were no part of the record of the case. The trial judge, upon an application of the solicitor-general, made within twenty days after the bill of exceptions was served on him, passed an order directing the clerk to send up copies of these affidavits as a part of the record. This action was taken under the Civil Code, §5536, but this section provides for having sent up parts of the record not ordered up in the certificate of the judge to the main or cross-bill of exceptions. These affidavits were no part of the record, and therefore could not be ordered sent up under this section. It follows, from what we have stated above, that the affidavits offered by the State to rebut the evidence offered by the defendant can not be considered, in determining whether the trial judge erred in overruling the grounds of the motion attacking the competency of the jurors trying the case.

The affidavits offered by the defendant, attached to his motion as exhibits, and filed with his motion as a part thereof, will be considered by this court, as the motion of which they are a part is a part of the record in the case. These affidavits were referred to in the grounds of the amendment to the motion for new trial, attached thereto as exhibits, duly marked with letters, and made and filed as a part of the motion itself. These affidavits, standing before this court uncontradicted, show that three of the jurors on the jury which convicted the defendant, under the repeated rulings of this court, were not competent jurors; and a new trial must of necessity follow.

The judgment of the court below is, therefore

*Reversed. All the Justices concur.*