**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2018**

# In the Court of Appeals of Georgia

A17A2127. THE STATE v. SCOTT.                    DO-070

DOYLE, Judge.

Anthony James Scott, a former Georgia State Patrol ("GSP") trooper, was indicted by the Grand Jury of Carroll County for misdemeanor reckless driving[1] and speeding[2] after he was involved in a collision while in the performance of his duties. Scott moved to quash the indictment and dismiss the charges, arguing that his rights under *Garrity v. New Jersey*[3] were violated when the State introduced during the grand jury proceedings a summary of some of his statements made to a GSP officer

---

[1] OCGA § 40-6-390 (a).

[2] OCGA § 40-6-181 (b).

[3] 385 U. S. 493 (87 SCt 616, 17 LE2d 562) (1967).

during an inter-departmental review following the collision. The trial court granted the motion, and the State appeals. For the reasons that follow, we reverse.

When considering an appeal of a trial court's order on a motion to dismiss and/or quash an indictment, "[w]e review the trial court's interpretations of law and application of the law to the facts de novo and its findings of fact for clear error."[4]

So viewed, the record shows that on September 26, 2015, Scott was on duty in his patrol car when he collided with another vehicle; two of the four people in the other car died as a result of their injuries, and the other two sustained serious injuries. On September 30, 2015, Scott gave a recorded statement to GSP Sergeant Chad Barrow regarding the collision.[5]

---

[4] (Punctuation omitted.) *State v. Peabody*, 343 Ga. App. 362, 363 (807 SE2d 107) (2017), quoting *Yancey v. State*, 342 Ga. App. 294 (802 SE2d 702) (2017).

[5] On the written form signed by Scott in connection with the interview, the portion indicating that he had been advised of his *Miranda* rights was crossed out. In another section titled "QUESTIONS AT END OF STATEMENT," the following questions, among others, were crossed out: "Have any threats or promises been made during this interview?" and "At any time did you request an attorney?" Scott acknowledged on the form that "[his] statement has been made freely, voluntarily[,] and without threats or promises of any kind."

Thereafter, the State presented evidence before the grand jury seeking an indictment charging Scott with reckless driving and speeding.[6] Sergeant Barrow testified, and he identified and the State introduced diagrams of the scene of the collision, which included speed limit signs. The State also introduced the video taken from Scott's dashboard camera, which showed Scott's approach to the intersection and the impact. Barrow estimated Scott's speed five seconds before the impact, two seconds before the impact, and at the time of impact, which speeds were calculated using data from the air bag in Scott's patrol car and the video. Barrow also testified about his interview of Scott, summarizing Scott's statements to him about the incident, including the events prior to the collision. At the conclusion of the proceedings, the grand jury returned an indictment against Scott charging him with misdemeanor reckless driving and speeding.

Scott filed a motion to dismiss and quash the indictment, alleging that because Georgia Department of Public Safety ("DPS") procedures required him to participate

---

[6] The State previously sought an indictment against Scott for two counts of homicide by vehicle in the first degree, two counts of serious injury by vehicle, and one count of violation of oath of public office; the grand jury declined to indict Scott on those charges. The State then sought an indictment against Scott solely for violation of oath of public office, and the grand jury again returned a no bill of indictment.

in the interview with Barrow, because he was not advised of his *Miranda* rights, and because he was not advised that the statements he provided were covered by *Garrity*, the State's introduction of his statements at the grand jury proceedings violated his rights under *Garrity*. At the hearing, the State conceded that it could not introduce Scott's statements at trial, but argued that the introduction of his statements in the grand jury proceeding did not require dismissal of the indictment. Following a hearing, the trial court granted Scott's motion, finding that his statements to police were not voluntary. The State appeals, arguing that the trial court erred by granting Scott's motion to quash. We agree.

In *Garrity*, the United States Supreme Court held that statements obtained under the threat of removal from government employment or office cannot be used "in subsequent criminal proceedings."[7] In Georgia, courts apply a totality-of-the-circumstances test to determine whether statements made by a public employee during an investigation into his activities are voluntary.[8]

---

[7] *Garrity*, 385 U. S. at 500.

[8] See *State v. Aiken*, 282 Ga. 132, 135 (2) (646 SE2d 222) (2007). The "[f]actors that a court may consider include . . . whether the State actor made an overt threat to the defendant of the loss of his job if he did not speak with investigators or whether a statute, rule, or ordinance of which the defendant was aware provided that the defendant would lose his job for failing to answer questions. If no express threat

4

Here, the State concedes that it could not use any of the evidence obtained during the interview of Scott by Barrow and two other troopers at the trial in this case, agreeing that the interviewers violated their own DPS policies as well as the protections set forth in *Garrity*. Thus, the sole issue before this Court is whether the State's introduction of Scott's statements during the grand jury proceedings requires dismissal of the indictment.

The State maintains that grand jury proceedings are not "criminal proceedings" contemplated by *Garrity*. But we need not decide that issue because there was additional evidence admitted before the grand jury to support the indictment.

---

is present, the court may examine whether the defendant subjectively believed that he could lose his job for failing to cooperate and whether, if so, that belief was reasonable given the State action involved. In determining whether the defendant's belief was objectively reasonable, the court may examine whether the defendant was aware of any statutes, ordinances, manuals, or policies that required cooperation and provided generally, without specifying a penalty, that an employee could be subject to discipline for failing to cooperate. The court may also consider whether the investigator implicitly communicated any threat of dismissal either in written or oral form; whether, before the interrogation began, the defendant was told he was free to leave at any time; and whether the defendant was told he had the right to have a lawyer present. A trial court, of course, is free to consider any other factor that it determines is relevant to the determination of voluntariness." Id. at 135-136 (2).

5

"Dismissal of an indictment and suppression of evidence are extreme sanctions, used only sparingly as remedies for unlawful government conduct."[9] "[A] defendant . . . seeking to quash an indictment has the burden to overcome the presumption that it was returned on legal evidence by showing there was no competent evidence upon which it could lawfully have been returned. . . ."[10] "The sufficiency of the legal evidence before the grand jury will not be inquired into."[11]

Here, in addition to Barrow's testimony regarding Scott's statements during the interview, the State also introduced the videotape of Scott's approach to the intersection where the collision occurred and the impact, a diagram of the intersection, and testimony estimating Scott's speed at the time immediately before

---

[9] *State v. Lampl*, 296 Ga. 892, 896 (2) (770 SE2d 629) (2015).

[10] *Whitehead v. State*, 126 Ga. App. 570 (1) (191 SE2d 336) (1972).

[11] Id. at 571 (2).

6

and at impact. Thus, "[Scott] has not carried his burden of showing that the evidence on which the indictment was returned was based on wholly incompetent evidence."[12]

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[12] Id. See also *Thomas v. State*, 331 Ga. App. 641, 656 (5) (771 SE2d 255) (2015) (affirming the denial of a plea in abatement challenging the indictment because the defendant failed to show that the objected-to "statements were the only evidence presented to the grand jury"); *Williams v. State*, 244 Ga. App. 26, 27 (1) (535 SE2d 8) (2000) (rejecting the defendant's argument that the indictment should have been quashed due to insufficient evidence because the defendant "provided . . . no proof whatsoever that the indictment against her was based on wholly illegal evidence").